UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MQVP, Inc.

    Plaintiff / Counter Defendant,

                                                                                Civil No. 07-10248
                                                                                Hon. John Feikens

    v.

Keystone Automotive Industries, Inc.

    Defendant / Counter Claimant,


_____/

**OPINION AND ORDER DENYING KEYSTONE'S MOTION FOR SUMMARY
JUDGMENT AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

    Plaintiff MQVP, Inc. ("MQVP") filed this suit against Defendant Keystone Automotive Industries, Inc. ("Keystone") alleging claims for false designation, false advertising, unfair trade practices, unfair competition, breach of contract, and intentional interference with business expectancy. Keystone has filed a motion for summary judgment on all claims on the basis of accord and satisfaction and a second motion for summary judgment on MQVP's service mark related claims. For the reasons set forth below, I DENY both Keystone's motion for summary judgment and its motion for partial summary judgment.

**I. Factual and Procedural Background**

    Keystone is a distributor of aftermarket auto parts. MQVP is a corporation that offers an aftermarket auto parts distribution program through which participating insurance companies can

assure the quality of aftermarket parts used in auto repairs. In April 2001, Keystone joined the MQVP program.

On March 9, 2005, MQVP placed Keystone on probation for violations of program requirements. On July 6, 2006, MQVP suspended Keystone from the program for continuing violations. Following the suspension, the parties entered negotiations regarding Keystone's status. On July 11, 2006, MQVP agreed to remove the suspension and place Keystone back on probation provided Keystone address fifteen issues. One of the issues was payment of $342,734.58 in unpaid fees. Keystone provided MQVP with a written response to each issue, sent MQVP a check for $342,734.58, and was taken off of suspension.

On October 25, 2006, Keystone sent a letter withdrawing from the MQVP program, effective November 30, 2006. On November 28, 2006, Keystone sent MQVP a check for $60,000. The check was accompanied by a letter from James C. Lockwood ("Lockwood"), Vice President and General Counsel for Keystone. In the letter, Lockwood explained why the check was sent:

> "Enclosed with this letter is our check...in the amount of $60,000.00 which represents our final payment due pursuant to the Distributor Service Level Agreement...dated as of September 15, 2003, as amended ("Agreement"). By letter to MQVP dated October 25, 2006, pursuant to Section 13A of the Agreement, we notified you that we were terminating the Agreement effective November 30, 2006. Consequently, the payment enclosed herewith completes all of our financial and other obligations to MQVP pursuant to the Agreement. If you agree to this, please execute the letter in the space provided below and fax a copy to me at [] and then you may deposit the check. If you do not agree, then please return the check to me at the above address."[1]

---

[1] MQVP's Response to Keystone's Motion for Summary Judgment on the Basis of Accord and Satisfaction, Ex. #11 (Letter J).

MQVP deposited Keystone's check for $60,000. Shortly thereafter, Ron McNulty ("McNulty"), MQVP's General Counsel, wrote a letter to Keystone stating that "[a]cceptance of your payment of the contractual minimum monthly obligation does not waive any rights or legal causes of action MQVP Inc., has against Keystone and none are, therefore, implied."[2]

Lockwood responded on Keystone's behalf with a letter to MQVP. "By depositing the check you have agreed to our conditions and your attempt in your letter...to revise the conditions without our agreement is null and void."[3]

On December 1, 2006, MQVP filed suit against Keystone alleging claims for false designation, false advertising, unfair trade practices, unfair competition, breach of contract, and intentional interference with business expectancy. Because MQVP had filed for Chapter 11 protection earlier in the year, it filed its adversarial suit against Keystone in the bankruptcy court. On February 7, 2007, I granted a joint motion to withdraw the reference to the bankruptcy court and accepted this case.

Because MQVP is in bankruptcy, the Trustee of MQVP's estate has taken responsibility for pursuing the claims against Keystone. In determining how best to pursue claims, a trustee must consider the interests of the creditors and debtor but bears the ultimate responsibility for making trial decisions. See Bauer v. Commerce Union Bank, Clarksville, Tennessee, 859 F.2d 438, 441 (6th Cir. 1988) ("Fully litigating a tort claim could easily exhaust assets that would otherwise go to creditors, and in the first instance the person vested with responsibility for

---

[2] MQVP's Response to Keystone's Motion for Summary Judgment on the Basis of Accord and Satisfaction, Exh. #13 (Letter K ).

[3] Keystone's Motion for Summary Judgment on the Basis of Accord and Satisfaction, Exh. #30 (Letter BB).

deciding whether to settle or fight is the trustee, not the debtor"). Trial courts treat litigation decisions made by trustees the same as those made by other litigants.

On April 4, 2007, MQVP served discovery on Keystone. Keystone responded that it had so many responsive documents that MQVP would not be able to handle the electronic compilation and ultimately did not produce any documents. On May 9, 2007, Keystone served MQVP with discovery requests that included requests for admission. In June 2007, the parties met and agreed to suspend discovery while they worked through various discovery disputes. MQVP provided the requested admissions on July 2, 2007, approximately three weeks after the deadline established by the service of the requests.

Keystone has filed two motions for summary judgment. In its first motion, Keystone argues that it should be granted summary judgment because (1) its July 2006 payment of $342,734.58 to MQVP constituted an accord and satisfaction; (2) its November payment of $60,000 constituted an accord and satisfaction; and (3) MQVP failed to timely answer Keystone's requests for admission, rendering those requests admitted pursuant to FRCP 36, and providing adequate grounds for granting summary judgment. Keystone has also filed a motion for partial summary judgment in the alternative to its motion for summary judgment on all claims. In this motion, Keystone argues that it should be granted summary judgement on MQVP's false designation, unfair trade practices, and unfair competition claims, asserting that the service mark that is central to each of these claims was not used in commerce or as a source identifier.

## II. ANALYSIS

### A.   Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). A fact is material if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To show the existence of a genuine issue of material fact, the nonmoving party must have more than a scintilla of evidence to support its position; there must be sufficient evidence that a jury could reasonably find for the nonmoving party. See Id. at 252. In determining whether there is a genuine issue of material fact, the court must view the evidence and the inferences that can be reasonably drawn from it in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Accord and Satisfaction

Keystone has filed a motion for summary judgment on all claims alleging that the checks that it paid to MQVP for $342,734.58 and $60,000 each functioned as an accord and satisfaction, baring the claims MQVP has raised in this suit. In Michigan, accord and satisfactions involving negotiable instruments, such as checks, are governed by statute. MCL § 440.3311. The Michigan Supreme Court has explained that under the statute there are four requirements for a valid accord and satisfaction. Hoerstman General Contracting v. Hahn, 474 Mich. 66, 76-78 (2006). First, there must be a good faith tender to the claimant as full satisfaction of the claim. Id. at 76. Second, the claim must be unliquidated or the subject of a bonafide dispute. Id. Third, the claimant must obtain payment of the instrument. Id. at 77. And fourth, the claim must be

5

discharged. Id. at 78.

The issue in this motion is whether Keystone sent its checks to address claims that were unliquidated or the subject of bonafide disputes. Black's Law Dictionary defines an unliquidated claim as one "in which the liability of the party or the amount of the claim is in dispute." Blacks's Law Dictionary (7th ed.). The Michigan Supreme Court has clarified that the claim must be in dispute at the time of the accord; disputes that arise after a check has been tendered and cashed do not meet the requirement. See Hoerstman, 474 Mich. at 77.

**1. The Check for $342,734.58**

In July 2005, Keystone sent a check to MQVP for $342,734.58. The check was sent in response to MQVP's assertion that Keystone had an open balance statement of $342,734.58.[4] In support of its assertion, MQVP sent Keystone an itemized breakdown of the amount due, accounting for every penny of the open balance.[5] Keystone sent the check without disputing its responsibility for the open balance or the amount due. For these reasons, I find that the claim Keystone paid with the check for $342,734.58 was not an unliquidated or disputed debt and, therefore, cannot form the basis for an accord and satisfaction.

**2. The Check for $60,000**

In November 2008, Keystone sent MQVP a check for $60,000. The check was accompanied by a letter. In the first line of the letter, Keystone explained why the check was sent. "Enclosed with this letter is our check...in the amount of $60,000.00 which represents our

---

[4]MQVP's Response to Keystone's Motion for Summary Judgment on the Basis of Accord and Satisfaction, Exh. #8 (Letter G ).

[5]MQVP's Response to Keystone's Motion for Summary Judgment on the Basis of Accord and Satisfaction, Exh. #10 (Letter I ).

final payment due pursuant to the Distributor Service Level Agreement...." In the latter part of the letter, Keystone attempted to lay the foundation for an accord and satisfaction.

> "Consequently, the payment enclosed herewith completes all of our financial and other obligations to MQVP pursuant to the Agreement. If you agree to this, please execute the letter in the space provided below and fax a copy to me at [] and then you may deposit the check. If you do not agree, then please return the check to me at the above address."

Keystone intended the check and letter to create the basis for an accord and satisfaction. The letter's first line, however, is a clear indication that the check was sent to pay a liquidated and undisputed debt. Keystone expressly acknowledged its responsibility to pay MQVP $60,000 under the Distributor Service Level Agreement. This $60,000, which Keystone had already agreed to pay as consideration under the Distributor Service Level Agreement, cannot be used as consideration for an accord and satisfaction. To hold that MQVP gave up its right to bring claims in return for money it was already owed would be unjust and run counter to the statutory requirement that the claim in an accord and satisfaction involving a negotiable instrument be unliquidated or the subject of a bonafide dispute. For these reasons, I hold that the check Keystone sent to MQVP for $60,000 did not create an accord and satisfaction.

### 3. FRCP 36

In its motion, Keystone has also argued that because MQVP was three weeks late in submitting responses to Keystone's requests for admission, the requests should be deemed admitted and the admissions should serve as grounds for summary judgment on the basis of accord and satisfaction. Federal Rule of Civil Procedure 36(a)(3) states that requests for admission that are not answered within thirty (30) days are admitted.

MQVP has responded to Keystone's argument with a claim that, in early June 2007 while the parties were conferring over discovery matters, counsel for Keystone requested that discovery be suspended and MQVP agreed. MQVP has also alleged that Keystone declined to respond to the discovery requests that MQVP served in May 2006. I find that MQVP's claims that the parties had agreed to suspend discovery and that Keystone has also failed to cooperate in discovery, and the fact that the requests for admission were ultimately provided, weigh against deeming the requests in question admitted and using them as a basis for granting summary judgment.

### C. Service Mark

For MQVP to prove that Keystone violated its service mark, it must show that Keystone used the mark in a manner that was likely to cause confusion regarding the origin of services. 15 U.S.C. 1125 (a)(1)(A). If Keystone did not use the mark to identify the source of services, the laws of service mark and trademark infringement do not apply. See Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc., 326 F.3d 687, 695 (6th Cir.2003) ("If [a defendant is] using [a plaintiff's] trademark in a 'non-trademark' way that is, in a way that does not identify the source of a product then trademark infringement and false designation of origin laws do not apply").

MQVP's service mark claims are based on three factual allegations. First, MQVP alleges that Keystone placed the MQVP service mark on the packaging of non-MQVP parts and that the parts and packaging were eventually sent to customers. Second, MQVP alleges that Keystone employees represented that they could sell MQVP parts to customers who where not part of the MQVP program. And third, MQVP alleges that Keystone employees represented that non-MQVP parts were the same as MQVP parts. In its motion for summary judgment, Keystone

8

argues that none of these three allegations state a claim for misuse of the MQVP service mark.

Keystone has acknowledged that there is evidence that parts bearing MQVP labels may have been sent to collision repair shops.[6] The use of the MQVP service mark in this manner could reasonably have led these collision repair shops to believe that non-MQVP parts were part of the MQVP program and came with the quality assurance, warranty and traceability services provided in connection with MQVP parts. If, as MQVP has alleged, Keystone represented that it could sell MQVP parts to customers who were not part of the MQVP program, those representations could have caused similar confusion. In both of these situations, Keystone's use of the MQVP service mark may reasonably have led customers to believe that they were receiving an MQVP part, complete with the services MQVP provides, when they were actually receiving a non-MQVP part that did not come with MQVP services. If proven, both of these allegations state a claim for misuse of the MQVP service mark.

MQVP's allegation that Keystone represented to customers that non-MQVP parts were the same as MQVP parts raises a different issue. When service marks are used to describe services, rather than to designate the origin of those services, customer confusion is less likely. When a customer is told that he will be sent a part that is the same as a MQVP part, he is unlikely to expect an actual MQVP part. If he is told that he will receive services that are the same as those offered by MQVP, he is unlikely to expect actual MQVP services. In these situations, the MQVP service mark is being used to describe services rather than to designate their source. Even if proven, this allegation does not rise to the level of misuse of MQVP's service mark.

---

[6]Keystone's Motion for Partial Summary Judgment, pg. 7.

Because MQVP's allegations that Keystone used the MQVP service mark on the packaging of non-MQVP parts that were eventually sent to customers, and that Keystone represented to customers who were not part of the MQVP program that it could sell them MQVP parts both support claims for misuse of MQVP's service mark, I DENY Keystone's motion for summary judgment on MQVP's service mark related claims.

## CONCLUSION

For the reasons set forth above, I DENY both Keystone's Motion for Summary Judgment on the Basis of Accord and Satisfaction and it's Motion Summary Judgment as to MQVP's service mark related claims.

**IT IS SO ORDERED.**


Date:     April 7, 2008              s/John Feikens
                                     United States District Judge


| Proof of Service |
|---|
| I hereby certify that the foregoing order was served on the attorneys/parties of record on April 7, 2008, by U.S. first class mail or electronic means. |
| s/Carol Cohron |
| Case Manager |